UNITED STATED FEDERAL DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
=======================================

| | |
|---|---|
| JAMES MONTOYA, | **COMPLAINT** |
| *Plaintiff*, | |
| against | Docket No.: 5:25-cv-1330 (FJS/ML) |
| DL MANUFACTURING, INC., | **JURY TRIAL DEMANDED** |
| *Defendant*. | |

=======================================

Plaintiff, James Montoya ("Plaintiff"), by his attorneys Gattuso & Ciotoli, PLLC, for his Complaint against Defendant DL Manufacturing, Inc., states as follows:

### NATURE OF THE ACTION

1.      Plaintiff brings this action seeking redress for Defendant violating its legal obligations to pay Plaintiff earned overtime wages under the Fair Labor Standards Act ("FLSA"). 29 U.S.C. §§ 207 et seq.

### THE PARTIES

2.      Plaintiff is an individual who currently resides in Santa Fe County, New Mexico, and has been employed by Defendant since July 2022.

3.      Defendant DL Manufacturing, Inc. is a Domestic Business Corporation formed under New York State law and operating within New York State.

4.      Defendant's principal place of business is located at 340 Gateway Park Dr., Syracuse, NY 13212, in Onondaga County, New York.

1

**JURISDICTION AND VENUE**

5.  This Court has subject matter jurisdiction pursuant to 29 U.S.C. § 1332 because there is complete diversity of citizenship between the parties, and the amount in controversy likely exceeds the sum or value of $75,000, exclusive of interest and costs.

6.  Plaintiff and Defendant are citizens of different states.

7.  Plaintiff is a resident and citizen of the State of New Mexico, where he is domiciled.

8.  The federal diversity jurisdiction statute provides that "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." 28 U.S.C. §1332(c)(1).

9.  Defendant is incorporated in New York, and its principal place of business is located in Onondaga County, New York.

10. Defendant is deemed to be a citizen of the State of New York for the purposes of federal diversity jurisdiction. 28 U.S.C. § 1332(c)(1).

11. Plaintiff seeks compensatory damages, including backpay wages for unpaid overtime, liquidated damages, and attorneys' fees. Given the damages sought in the Complaint, the amount in controversy likely exceeds $75,000.

12. Venue for this action in the Northern District of New York under 28 U.S.C. § 1391(b)(1) is appropriate because it is where Defendant resides.

**FACTUAL ALLEGATIONS**

I.  **Plaintiff's Employment with Defendant and Duties**

13. Plaintiff has been employed by Defendant as a full-time Lead Installation Service Technician (referred to herein as "Lead Technician") since approximately July 1, 2022, and still works for Defendant in that position to this date.

14. During the relevant period of time, Plaintiff was temporarily not employed by Defendant from January 9, 2024 to June 2, 2024, after which he returned to work for Defendant in the same Lead Technician position.

15. Plaintiff originally applied for an entry level Field Installation Technician position with Defendant in 2022. Upon reviewing his professional experience, Defendant offered Plaintiff a position as a Lead Technician instead.

16. At the time Plaintiff was offered the job as a Lead Technician, Defendant advised him that it was a salaried position exempt from earning overtime wages.

17. Defendant never offered to pay Plaintiff by the hour with the eligibility to earn overtime wages for the Lead Technician position.

18. As a Lead Technician, Plaintiff primary duties and responsibilities consist of:

- Handling and performing jobsite installations of products sold by DL Manufacturing for clients.
- Overseeing and managing service crew members on jobsites performing installations for clients.
- Handling customer interface on jobsites.
- Support sales reps and customers as needed.

19. Attached as Exhibit "A" is a copy of a current job posting from Defendant's website for a Lead Installation/Service Technician position, which lists these duties and responsibilities.

20. Plaintiff's primary duties as a Lead Technician involve performing manual labor on jobsites across multiple states outside of any office setting.

21. Plaintiff's primary duties as a Lead Technician are not involved with managing any part of Defendant's enterprise, or performing duties directly related to its management or general business operations.

22. As a Lead Technician, Plaintiff's cannot hire, fire, or discipline any other employees.

23. As a Lead Technician, Plaintiff does not exercise discretion or independent judgment with respect to matters of significance, as all orders, decisions, and procedures for performing the duties and tasks assigned to him are made by his superiors and Defendant's corporate leaders.

24. Defendant did not require that Plaintiff possess advanced knowledge in a field of science or learning in order qualify for the position of Lead Technician.

25. Based on the nature of the specific duties, responsibilities, and qualifications as described above, Defendant's Lead Technician position should be classified as a non-exempt hourly position under the FLSA eligible to earn overtime wages.

26. Defendant has acknowledged that the position of Lead Technician should be classified as a non-exempt hourly position under the FLSA.

27. Defendant classifies and pays multiple other current employees who work as Lead Technicians on an hourly basis and pays them overtime wages.

**II.     Plaintiff's Classification and Compensation from Defendant**

28. Throughout the entirety of his employment as a Lead Technician, Plaintiff has been classified and treated by Defendant as a salaried employee exempt from earning overtime wages.

29. On average, Plaintiff has regularly worked on average between 50 - 60 hours per week since he started working for Defendant as a Lead Technician in July 2022.

30. From July 2022 through late July 2025, Plaintiff was not required, nor provided any means, by Defendant to track and record the actual number of hours that he worked during each shift.

31. Instead of paying Plaintiff an hourly wage, Defendant has instead regularly paid Plaintiff a base salary of $50,000.00 since being hired in July 2022.

32. Plaintiff is paid by Defendant on a weekly basis.

33. Every paycheck Plaintiff has received from Defendant for working a full week states that he worked exactly 40 hours, regardless of how many hours above that he actually worked, and he receives a gross payment of approximately $961.60 for that time, which converts to a rate of $24.04 per hour.

34. Plaintiff's salary has not changed since being hired by Defendant in July 2022.

35. Attached as Exhibit "B" are Plaintiff's paystubs issued by Defendant from August 11, 2022, to July 24, 2025.

36. Starting in late July 2025, Defendant has required all employees to record their work hours using the app Paylocity on their work phones.

37. For the weeks of July 28, 2025 – August 3, 2025, August 4, 2025 – August 10, 2025, September 1, 2025 – September 7, 2025, and September 8, 2025 – September 14, 2025, Plaintiff tracked and entered his work hours into Paylocity for Defendant. Plaintiff's time entries show that he worked 51 hours during the week of July 28, 2025 – August 3, 2025, 49.50 hours during the week of August 4, 2025 – August 10, 2025, 48 hours during the week of September 1, 2025 – September 7, 2025, and 56.50 hours during the week of September 8, 2025 – September 14, 2025.

38. However, just like every week before, Plaintiff's pay information from Defendant states that he only worked 40 hours during each of these weeks and was paid his standard salary payment of $961 for that time.

39. Attached as Exhibit "C" are Plaintiff's time entries and pay information from Paylocity for July, August, and September 2025.

40. In addition to his base salary, Defendant pays Plaintiff a bonus based on the quantity

of installation assignments he completes on a monthly basis.

41. Specifically, for each type of product Plaintiff installs for Defendant's clients on jobsites, such as doors, safety lights, fans, docks, etc., there is a designated flat fee bonus associated with that product that he receives from Defendant. These bonuses are paid to Plaintiff once a month in a lump sum based on the information he provides to his supervisor, Fred Spicer, for the corresponding month.

42. Defendant classifies the monthly bonuses Plaintiff receives as non-discretionary.

43. Plaintiff's bonuses are not related to or determined by the number of overtime hours he works in any given week. These bonuses are strictly based on the number and types of installation assignments Plaintiff completes within a given month, regardless of how much time they take to complete.

### III. **Defendant's Willful Violation of the FLSA**

44. Defendant has always known that Plaintiff's position as a Lead Technician should be classified as a non-exempt hourly position under the FLSA.

45. Defendant claims that it has classified and paid Plaintiff individually as an exempt salaried employee throughout the entirety of his employment since July 2022 because he personally requested that he be paid as a salaried employee instead of hourly when originally hired.

46. Plaintiff never requested that Defendant pay him as a salaried employee.

47. Plaintiff never requested or consented to Defendant not paying him overtime wages for all hours he worked above 40 in a work week while employed by Defendant.

48. As an employee, Plaintiff cannot waive his right to overtime wages under the FLSA.

49. Defendant knew that it could not classify and treat Plaintiff as a salaried employee

exempt from earning overtime wages when the position he was hired for, and still works to this date, does not qualify for any exemption from being paid overtime wages under the FLSA.

50. Defendant knew that, per its obligations under the FLSA as an employer, it was required to properly pay Plaintiff for all overtime hours he worked above 40 in any given work week, regardless whether or not he requested to be salaried.

51. Defendant is aware that Plaintiff has regularly worked above 40 hours during most, if not every week he has worked for Defendant since being hired in July 2022.

52. Defendant has never paid Plaintiff overtime wages as required by the FLSA.

## FIRST CAUSE OF ACTION

### VIOLATION OF UNPAID OVERTIME WAGES UNDER THE FLSA

53. Plaintiff hereby incorporates paragraphs "1" through "52" inclusive, as if fully set forth herein.

54. Plaintiff brings this claim for relief pursuant to the Fair Labor Standards Act ("FLSA") at 29 U.S.C. § 201, et seq.

55. Pursuant to the FLSA, 29 U.S.C § 207, "no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." This overtime compensation requirement is mandatory for covered employees.

56. Plaintiff is an "employee" within the meaning of the FLSA. 29 U.S.C.A. §203(e))

57. Defendant is an "employer" within the meaning of the FLSA. 29 U.S.C.A. § 203(d).

58. Based on the nature of Plaintiff's duties as a Lead Installation Service Technician, along with the qualifications and requirements set forth by the Defendant to be employed for this

position, a Lead Installation Service Technician does not qualify for any exemption from the FLSA's overtime compensation requirements. 29 U.S.C.A. § 213.

59. As an employee, Plaintiff cannot legally waive his rights under the FLSA to being paid overtime wages for any reason or in any manner.

60. Employers remain legally obligated to comply with FLSA overtime requirements when an employee's position does not qualify for any recognized exemption, regardless if the employee requests to be paid under a salary instead of by an hourly wage.

61. Non-discretionary lump sum bonuses that do not fluctuate based on the number of overtime hours an employee has worked cannot qualify as or count towards overtime wages owed to a non-exempt hourly employee.

62. Federal regulations explicitly prohibit crediting lump sum bonus payments against statutory overtime compensation requirements. 29 CFR § 778.310. Instead, non-discretionary bonuses must be included in the regular rate calculation, which is then used to determine the accurate the overtime premium owed to employees. 29 CFR § 778.209; 29 CFR § 778.211.

63. Under 29 U.S.C. § 207(h)(2), only extra compensation paid to employees as described in 29 USCA § 207 (e)(5), (6), and (7) can be creditable toward overtime compensation that is owed.

64. Defendant misclassified and treated Plaintiff as a salaried employee exempt from earning overtime wages when, based on the nature of his job and duties, he should have always been paid as an hourly employee eligible to earn overtime.

65. Defendant failed to pay Plaintiff any and all earned overtime wages, at the rate of one-and one-half times his regular rate of pay, for the time in which he worked after the first 40 hours in every work week.

66. Defendant willfully, knowingly, purposefully, and/or recklessly violated its obligations under the FLSA by failing to properly pay Plaintiff for any and all overtime hours he has worked.

67. The bonuses Defendant has paid Plaintiff on a monthly basis for the number of installation assignments he completed in each corresponding month cannot offset or be credited towards the amount of overtime wages Plaintiff should have been paid throughout the course of his employment.

68. The bonuses Defendant has paid Plaintiff on a monthly basis for the number of installation assignments he completed in each corresponding month do not satisfy any criteria under 29 USCA § 207 (e)(5), (6), or (7) in order to be creditable toward overtime compensation that he is owed.

69. On this claim for relief, Plaintiff seeks the payment of all unpaid overtime wages, such sums to be determined based upon an accounting of the hours worked and wages actually paid to Plaintiff.

70. Plaintiff also seeks an award of liquidated damages in the amount of 100% of the unpaid overtime wages, plus attorneys' fees, interest, and costs as provided by the FLSA.

## JURY TRIAL

Plaintiff demands a jury trial as to all issues triable by jury.

## PRAYER FOR RELIEF

Plaintiff respectfully requests that this Court grant her the following relief:

A. A declaratory judgment that Defendant violated its obligations and Plaintiff's rights under the FLSA;

B. Recoverable back pay for all unpaid overtime wages;

C. Liquidated damages equivalent to 100% of the unpaid overtime wages owed to Plaintiff;

D. Attorneys' fees and costs associated with this action under the FLSA;

E. Any other relief that the Court deems proper.

Dated: September 23, 2025

**ATTORNEYS FOR THE PLAINTIFF**

By:    *s/ Ryan G. Files*
Ryan G. Files
GATTUSO & CIOTOLI, PLLC
Bar Roll #: 702255
The White House
7030 E. Genesee Street
Fayetteville, New York 13066
Phone: 315-314-8000
Fax: 315-446-7521 (fax)
rfiles@gclawoffice.com